**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALANNA MORTON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case 7:24-cv-00173-CS |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| HEALTH-ADE LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Alanna Morton ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Health-Ade LLC ("Defendant" or "Health-Ade"), for manufacturing, marketing and distributing beverage products that contain dangerous levels of per- and polyfluoroalkyl substances ("PFAS"), also known as "forever chemicals." Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

1.      Health-Ade is a beverage company that sells kombucha and other soft beverages (the "Products"). The Products are marketed and advertised as "health" products that are "natural" and "organic." An example is pictured below:

  

2.      The Products' name alone, "Health-Ade," deceptively gives the impression that the Products are healthy and/or aid health.

3.      But, unfortunately for consumers, all of the Products contain something that humans should never ingest: dangerously high levels of PFAS chemicals.

4.      Independent laboratory testing has revealed that the following Health-Ade Products tested positive for PFAS chemicals:

| **Product Name** | **PFAS Detected** | **ng/L** |
|---|---|---|
| Health-Ade Kombucha Ginger Pineapple Belly Reset | PFBA | 75.7 |
| Health-Ade Kombucha Strawberry Glow with Bamboo Extract and Biotin | PFBA | 19.674 |
| Health-Ade Kombucha Mint Limeade | PFBA | 17.982 |

2

| Health-Ade Kombucha Cayenne Cleanse | PFHxA | 44.0 |
|---|---|---|
| Health-Ade Pop Pomegranate Berry | 6:2FTS | 13.26 |

5.      The testing was performed in or around the Spring and Summer of 2023 by two independent laboratories located in Charleston, South Carolina and San Diego, California, respectively.  The purpose of the testing was to analyze PFAS using Liquid Chromatography/Tandem Mass Spectrometry (LCMSMS).  The analytical methods used were EPA 537.1 Modified and EPA Method 1633.  The laboratories hold DoD ELAP ISO17025:2017 accreditations for these test methods.

6.      These PFAS chemicals are all dangerous to human health if ingested, even at very low levels.  According to the EPA, the levels at which negative human health effects could occur are significantly lower than previously understood, including at near zero in some instances.

7.      In other words, there is no "safe" level of exposure to PFAS chemicals.  Even trace levels of PFAS can be harmful to human health.

8.      There is no effective treatment for removal of PFAS chemicals from the body.  Therefore, experts agree that the most effective strategy to decrease health risk is to avoid and/or limit exposure to products known to contain PFAS chemicals.

9.      PFAS are a family of more than 4,000 highly fluorinated aliphatic compounds manufactured by humans.

10.      PFAS are known as "forever chemicals" due to their extended half-life and extreme persistence and bioaccumulation in human bodies.

11.      PFAS have been shown to have a number of toxicological effects in laboratory studies and have been associated with thyroid disorders, immunotoxic effects, and various cancers in epidemiology studies.  The CDC has outlined a host of health effects associated with

3

PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease.

12.     The EPA has also designated chemicals as PFAS due to their being "linked to problems including cancers, impacts to the liver and heart, and immune and developmental damage to infants and children."[1]

13.     On October 18, 2021, underscoring the gravity of the PFAS threat, the Biden Administration announced accelerated efforts to protect Americans from PFAS, nothing that they "can cause severe health problems and persist in the environment once released, posing a serious threat across rural, suburban, and urban areas."

14.     The presence of PFAS in food and drinks have become a primary concern for the Biden Administration.  The Biden administration recently finalized strict limits on PFAS in drinking water, requiring utilities to reduce PFAS to the lowest level they can possibly measure.

15.     The EPA Administrator Michael Regan said that this rule was the most important action the EPA has ever taken on PFAS, underscoring the harmfulness of PFAS.

16.     The new rule sets strict limits on two common types of PFAS-PFOA and PFOS-at 4 parts per trillion.

17.     The limit is so strict because even tiny amounts of PFAS in things people drink, overtime, accumulate to dangerous levels. Each time someone takes a sip of something with PFAS in it, the toxicity continues to add up, leading to health effects.

18.     Health advocates argue that these rules should have been put in place sooner and that manufacturers have been aware of the harmful effects of PFAS and the presence of PFAS in

---

[1] https://www.law360.com/articles/1827354/epa-says-2-forever-chemicals-are-hazardous-substances.

their products, but hid or downplayed the evidence.[2]

19.     Eliminating PFAS in drinking water is expected to save 10,000 deaths over the next decades and significantly reduce serious illnesses.  But, the continued presence of PFAS in other products people eat, drink, and use is extremely dangerous.

20.     The specific PFAS found Health-Ade's Products are of particular concern.

21.     Perfluorobutanoic acid ("PFBA") is a type of PFAS used in non-stick and stain-resistant food packaging and carpets, as well as photographic film.  In laboratory animal studies, exposure to high levels of PFBA resulted in thyroid and liver effects, such as increased thyroid and liver weight, changes in thyroid hormones, decreased cholesterol, and cellular changes in both organs.  Other effects of PFBA exposure included delayed development and decreased red blood cells and hemoglobin.  Additionally, PFBA, more than other PFAS, is known to accumulate in the lungs which has been shown to suppress immune function.[3]  In turn, people with higher PFBA levels have a higher risk of being hospitalized, ending up in intensive care, and dying from COVID-19 than those with lower levels.[4]

22.     Perfluorohexanoic acid (PFHxA) is a breakdown product of stain- and grease-proof coatings on food packaging, couches, and carpets.  It is entirely a manmade compound and a known cause of hepatic, developmental, hematopoietic, and endocrine effects.

23.     6:2 Fluorotelomer Sulfonate ("6:2 FTS") is known to cause kidney and liver damage.

24.     In light of the harm caused by PFAS, consumers have grown increasingly aware of and concerned about PFAS in their bodies, the environment, and the products they use.  In a

---

[2] https://apnews.com/article/forever-chemicals-pfas-pollution-epa-drinking-water-1c8804288413a73bb7b99fc866c8fa51.
[3] https://www.hsph.harvard.edu/news/hsph-in-the-news/pfas-exposure-linked-with-worse-covid-19-outcomes/.
[4] *Id.*

survey of more than 1,000 consumers, nearly all participants (98%) indicated they were interested in knowing about the presence of harmful chemicals in everyday products.

25.    No reasonable consumer would expect that a product marketed for one's health would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans.

26.    The Products are sold at a price premium as compared to other Kombucha products, as pictured below.



27.    Accordingly, Plaintiff and Class members suffered economic injuries as a result of purchasing and thereby overpaying for the Products.

## JURISDICTION AND VENUE

28.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

29.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with this state.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiff' claims took place within this District because Plaintiff purchased the Product in this District and was therefore injured in this District.

**PARTIES**

31.     Plaintiff Alanna Morton is, and at all times relevant to this action has been, a resident of Hastings-on-Hudson, New York.  In or around August of 2023, Plaintiff purchased Defendant's Health-Ade Kombucha Ginger Pineapple Belly Reset at a gas station in Liberty, New York.  Plaintiff prefers to only consume things that are healthy, natural, and organic.  Plaintiff specifically seeks out products that are labeled as such.  Plaintiff pays more for products that are labeled as healthy, natural, and organic, and foregoes less expensive alternatives that are not labeled as such.

32.     Plaintiff, when she made her purchase, saw and believed that the Product supported "health" and a "happy gut," "restore[d] body and mind," and was "natural" and "organic."  Plaintiff's belief was based on her review of the Product's name, its advertising and marketing, and the labels on the Product's packaging.  Plaintiff relied on Defendant's representations in making her purchase.

33.     Had Defendant disclosed on the label that all of Defendant's Products contained PFAS chemicals, and the harms that can result from ingesting PFAS chemicals, she would not have purchased the Product at all.  Plaintiff would not have spent any money on a product that

she knew contained PFAS chemicals.  As a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered economic injuries.  Plaintiff would consider purchasing Defendant's Products in the future if Defendant removed the PFAS chemicals from them.

34.    Defendant Health-Ade LLC is a California limited liability corporation with its principal place of business in Torrance, California.  Defendant manufactures, markets, and distributes the Products throughout the United States.

## CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated individuals nationwide (the "Class"), defined as follows:

> All consumers who purchased the Products within the United States during the statute of limitations period (the "Class Period") and until the date of class certification.

36.    Included in the Class, to the extent necessary, is a subclass of all persons who purchased Health-Ade Products (as defined herein) in New York during the Class Period (the "New York Subclass").

37.    Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

38.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.   Whether Defendant is responsible for the advertising at issue;

b.   Whether the advertising of the Products was unfair, false, deceptive, fraudulent

and/or unlawful;

c. Whether Defendant's conduct as set forth above injured Plaintiff and Class members.

39.     Plaintiff's claims are typical of the claims of the Class in that she was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Products, and suffered a loss as a result of those purchases.

40.     The precise number of the Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

41.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions involving false advertising, and she intends to prosecute this action vigorously.

42.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments.  The substantive claims of Plaintiff and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws.  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable.  The expense and burden of individual litigation would make it

impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits.  Trial of Plaintiff's and the Class members' claims together is manageable.  Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

44.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

45.     The prerequisites to maintaining a class action are met: By misrepresenting the nature of the Products and/or omitting that the Products contain dangerously high levels of PFAS, Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

46.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

47.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
**Violations of the New York General Business Law ("GBL") § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

48.     Plaintiff realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

49.     The acts of Defendant, as described above, were directed at consumers.

50.     Defendant misleadingly markets the Products as containing health benefits, when testing has shown the presence of PFAS in dangerously high levels, which have a negative impact on human health.  In addition, Defendant misleads consumers in a material way by omitting that the Products contain dangerously high levels of PFAS.

51.     Accordingly, Defendant's conduct is materially misleading in that it induced Plaintiff and the New York Subclass members to purchase and overpay for the Products when they otherwise would not have, or would not have been willing to pay as much, had they known the Products contained dangerously high levels of PFAS.

52.     As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

53.     By reason of the foregoing, Plaintiff and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; and (2) reasonable attorneys' fees.

**COUNT II**
**Unjust Enrichment**
**(on Behalf of Plaintiff and All Class Members)**

54.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

55.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass.

56.     Plaintiff and the proposed Class and New York Subclass members conferred benefits on Defendant by purchasing the Products.

57.     Defendant had knowledge of such benefits.

58.     Defendant has been unjustly enriched in retaining the revenues derived from

Plaintiff's and the proposed Class and New York Subclass members' purchases of the Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented the Products as promoting "health" and/or omitted from consumers that the Products contain dangerously high levels of PFAS chemicals.

59.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and proposed Class and New York Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the proposed Class and New York Subclass members for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

a.     For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b.     For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all causes of action asserted herein;

d.     For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  May 6, 2024                         Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____/s _Joshua D. Arisohn_____
        Joshua D. Arisohn

Joshua D. Arisohn
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jarisohn@bursor.com
          pfraietta@bursor.com
          aleslie@bursor.com

*Attorneys for Plaintiff*